UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| ANDREA MIDDLETON, *On Behalf of Herself and All Others Similarly Situated*,<br><br>        Plaintiff,<br><br>v.<br><br><br>DART CONTAINER CORPORATION<br><br>   c/o United Agent Group, Inc.<br>   28175 Haggerty Road<br>   Novi, MI 48377<br><br>And<br><br>DART CONTAINER CORPORATION OF PENNSYLVANIA<br><br>   c/o United Agent Group, Inc.<br>   28175 Haggerty Road<br>   Novi, MI 48377<br><br>        Defendants. | Case No.<br><br><br>**COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Now comes Plaintiff, Andrea Middleton, by and through undersigned counsel, and for her Complaint against Defendants Dart Container Corporation and Dart Container Corporation of Pennsylvania (d/b/a Dart Container Corporation), states and alleges the following:

## INTRODUCTION

1.      This is a "collective action" instituted by Plaintiff as a result of Defendants' practices and policies of not paying their non-exempt employees, including Plaintiff and other similarly situated employees, for all hours worked, including overtime compensation at the rate of one and one-half times their regular rate of pay for all the hours they worked in excess of 40 each workweek, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219.

2.      This is also a "class action" pursuant to Fed. R. Civ. P. 23 to remedy violations of the Pennsylvania Minimum Wage Act, 43 P.S. § 333.101, *et seq.* ("PMWA").

## JURISDICTION AND VENUE

3.      This Court has federal question jurisdiction pursuant 28 U.S.C. § 1331, as this case is brought under the laws of the United States, specifically the FLSA, 29 U.S.C. § 216(b), *et seq*.

4.      The Court has personal jurisdiction over Defendants as their headquarters and principal place of business are located in Michigan.

5.      Venue is proper pursuant to 28 U.S.C. § 1391(b) because Defendants' principal place of business is in this District, Defendants conducts business throughout this District, and a substantial part of the events and omissions giving rise to the claims occurred in this District.

## PARTIES

6.      At all material times, Plaintiff is and was a citizen of the United States, and a resident of Lancaster County, Pennsylvania.

7.      At all material times, Defendant Dart Container Corporation is and was a corporation for profit with its headquarters and principal place of business located at: 500 Hogsback Road, Mason, Michigan 48854.

8.      Defendant Dart Container Corporation may be served with process by serving its registered agent: United Agent Group, Inc., 28175 Haggerty Road, Novi, Michigan 48377.

9.      At all material times, Defendant Dart Container Corporation of Pennsylvania is and was a domestic corporation for profit with its headquarters and principal place of business located at: 500 Hogsback Road, Mason, Michigan 48854.

10.     Defendant Dart Container Corporation of Pennsylvania may be served with process by serving its registered agent: United Agent Group, Inc., 28175 Haggerty Road, Novi, Michigan 48377.

11.     At all material times, Defendant Dart Container Corporation of Pennsylvania is and was a branch, wholly owned subsidiary, or otherwise related entity of Defendant Dart Container Corporation.

12.     In addition to Defendant Dart Container Corporation of Pennsylvania, Defendant Dart Container Corporation has several other branches, wholly owned

subsidiaries, and/or related entities in the United States (hereinafter "Dart Container Entities"), including: Dart Container Corporation of California; Dart Container Corporation of Florida; Dart Container Corporation of Georgia; Dart Container Corporation of Illinois; and Dart Container Corporation of Kentucky.

13.     Plaintiff's written consent to this action is attached as Exhibit 1.

14.     Written consents to join this action, as and when executed by other individual plaintiffs, will be filed pursuant to 29 U.S.C. § 216(b).

## COVERAGE

15.     At all material times, Plaintiff was an employee within the meaning of 29 U.S.C. § 203(e) and 43 P.S. § 333.103.

16.     At all material times, Plaintiff and other similarly situated employees were employees engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. §§ 206-207.

17.     At all material times, Defendants are and were employer within the meaning of 29 U.S.C. § 203(d) and 43 P.S. § 333.103.

18.     At all material times, Defendants are an enterprise within the meaning of 29 U.S.C. § 203(r).

19.     At all material times, Defendants have been an enterprise in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1), and have enjoyed yearly gross revenue in excess of $500,000.

4

20. At all material times, Defendant Dart Container Corporation and the Dart Entities, including Defendant Dart Container Corporation of Pennsylvania, have operated as a single "enterprise" within the meaning of 29 U.S.C. § 203(r)(1), and are joint employers.

21. Defendant Dart Container Corporation and the Dart Entities, including Defendant Dart Container Corporation of Pennsylvania, perform related activities through unified operation and common control for a common business purpose, and part of their unified business model is the wage violations alleged in this Complaint.

22. Defendant Dart Container Corporation and each of the Dart Entities operate with a high degree of interrelated and unified operations, sharing the same operating name, the same headquarters, the same directors and officers, and common employment policies.

23. Upon information and belief, each of the Dart Entities are controlled by the same Dart Container Corporation leadership team and share common personnel and labor policies emanating from a common or centralized source.

24. Defendant Dart Container Corporation and the Dart Entities (together "the Dart Enterprise"), represent themselves to the public as one company, "Dart" or "Dart Container Corporation", with a corporate headquarters in Mason, Michigan and manufacturing plants across the country. The Dart Container Corporation website states: "we have manufacturing and distribution centers in 15 states", and

5

lists each Dart Enterprise manufacturing plant, including the plant located in Leola, Pennsylvania, where Plaintiff worked. (*See* https://www.dartcontainer.com/why-dart/about/plant-locations).  Below is a screenshot of the "Dart Corporate Offices and Plant Locations" page of Dart's website (taken on March 18, 2025):



## US CORPORATE OFFICES

### Mason, Michigan

Mason is the location of our Corporate Headquarters where it all began in 1960. Located 15 miles south of Lansing, the Mason campus consists of offices, manufacturing facilities and a distribution warehouse.

### Fort Lauderdale, Florida

Fort Lauderdale is the location of our global sales headquarters, Dart Container Sales Company (DCSC). DCSC office personnel include sales support, sales training and market research. All of our Outside Sales Representatives and Managers work out of a home office.

## US PLANT LOCATIONS

We have manufacturing and distribution centers in 15 states. If you are interested in a manufacturing, engineering or administrative position in one of these locations, explore our **open positions** or fill out a profile to be notified when a position becomes available in your area.

- Corona, CA
- Lodi, CA
- Chino, CA
- New Castle, DE
- Plant City, FL
- Conyers, GA
- Lithonia, GA
- Thomaston, GA
- Social Circle, GA
- Twin Falls, ID
- Chicago, IL
- Country Club Hills, IL
- North Aurora, IL
- Horse Cave, KY
- Owensboro, KY
- Federalsburg, MD
- Mason, MI
- Quitman, MS
- Randleman, NC
- Ada, OK
- Lancaster, PA
- Leola, PA
- Dallas, TX
- Grand Prairie, TX
- Waxahachie, TX
- Lacey, WA

25.     The Dart Enterprise advertises open manufacturing positions at all Dart plant locations on the same website (https://jobs.dart.biz/search). For example, the following screenshots are job postings for the titles "operator"  and "inspector packer" (taken on March 19, 2025):





26.    The website states that "Dart is an affirmative action employer" and refers individuals to "OUR HR DEPARTMENT" and "Our HRConnect team". (*See* https://www.dartcontainer.com/why-dart/about/plant-locations). Similarly, the "Equal Employment Opportunity & Affirmative Action" page" of the Dart Container Corporation website states: "Dart is committed to maintaining a work environment that is free from any and all forms of unlawful discrimination and harassment", and refers questions concerning its employment policies to "Dart's Fair Employment Practices group." (*See* https://www.dartcontainer.com/legal/eeoaa).

8

Below is a screen shot of the "Equal Employment Opportunity & Affirmative Action" page of the Dart Container Corporation website (taken on March 19, 2025).

27.  Each of the Dart Enterprise plants are operated in the same or substantially similar fashion, and upon information and belief, the Dart Entities all share the same labor and employment policies, procedures, and practices, including those complained of herein.

28.  Upon information and belief, Defendant Dart Container Corporation has control over the employment, pay, and benefits of all manufacturing employees, regardless of the Dart Entities that appear on their W-2s.

29.  Defendant Dart Container Corporation is and was an employer of employees of each of the Dart Entities and is liable for wage violations to which they were subjected.

## FACTUAL ALLEGATIONS

30.  Defendant Dart Container Corporation operates approximately 26 manufacturing plants across the United States.

31.  At each of its manufacturing plants, Defendant Dart Container Corporation with and/or through the Dart Entities, manufactures disposable food containers.

32.  At each of its manufacturing plants, Defendant Dart Container Corporation and the Dart Entities employ/jointly employ manufacturing employees,

9

including: operators, material handlers, inspector-packers, and warehouse associates (hereinafter "manufacturing employees").

33.    From approximately June 2024 through January 23, 2025, Plaintiff was employed by Defendants as a manufacturing employee at the Dart manufacturing plant located in Leola, Pennsylvania. Specifically, Plaintiff worked as a machine operator.

34.    At all material times, Defendant Dart Container Corporation and the Dart Entities employed similarly situated manufacturing employees at each of the Dart manufacturing plants, including: operators, material handlers, inspector packers, and warehouse associates (hereinafter "manufacturing employees").

35.    Plaintiff and other similarly situated manufacturing employees had the same and/or substantially similar job duties and/or responsibilities and were subjected to the same policies and procedures.

36.    Plaintiff and other similarly situated manufacturing employees of Defendant Dart Container Corporation and the Dart Entities were classified as non-exempt.

37.    Plaintiff and other similarly situated manufacturing employees of Defendant Dart Container Corporation and the Dart Entities were paid an hour wage.

38.     Plaintiff and other similarly situated manufacturing employees were regularly scheduled to work 40 or more hours per week, but regularly worked more than 40 hours per week.

**(Failure to Pay for All Hours Worked)**

39.     Plaintiff and other similarly situated manufacturing employees were only paid for work performed between their scheduled start and stop times, and were not paid for work performed before and after their scheduled start and stop times, including: (a) changing into and out of personal protective equipment, including a reflective vest or uniform, gloves, a hardhat, boots, and safety glasses; and (b) walking to and from their assigned area of the manufacturing floor.

40.     The pre-shift work—i.e., changing into personal protective equipment, and walking to the assigned area of the manufacturing floor—took upwards of approximately 10 minutes or more, and thus, in order to start their work on time, Plaintiff and other similarly situated manufacturing employees had to arrive at least 10 minutes early to start this pre-shift work.

41.     The post-shift work—i.e., walking from the manufacturing floor and changing out of personal protective equipment—also took upwards of approximately 10 minutes or more.

42.     In addition, Plaintiff and other similarly situated manufacturing employees were frequently required to start performing their manufacturing work

11

before their shift start times and required to continue performing their manufacturing work on the manufacturing floor after their shift end times to complete tasks that were not finished at the end of their shifts.

43.    Defendants knew that Plaintiff and other similarly situated manufacturing employees performed this pre-shift and post-shift work because they required them to perform it and supervisors observed them performing it.

### (Failure to Pay for Donning Time)

44.    Before Plaintiff and other similarly situated manufacturing employees began their shifts, they donned personal protective equipment, including a reflective vest/uniform, gloves, a hard hat, boots, and safety glasses.

45.    Wearing personal protective equipment was necessary because Plaintiff and other similarly situated manufacturing employees could not safely perform their work without it.  It protected Plaintiff and other similarly situated manufacturing employees from various injuries, including head, hand, foot, eye, ear, and other bodily injuries.

46.    Additionally, Defendants required Plaintiff and other similarly situated manufacturing employees to put the personal protective equipment on and take it off at work so that it was maintained in a sanitary and reliable condition.  Defendants did not want Plaintiff and other similarly situated manufacturing employees to take their personal protective equipment home.

47.    The time Plaintiff and other similarly situated manufacturing employees spent donning their personal protective equipment was an integral and indispensable part of their principal activities, was required by Defendants and the Occupational Safety and Health Administration ("OSHA") and was performed for Defendants' benefit in that it helped keep the plant floors safe and helped promote a more safe and efficient manufacturing process.

48.    Donning personal protective equipment is an intrinsic element of the manufacturing process of industrial and paper packing products and materials. Plaintiff and other similarly situated manufacturing employees cannot dispense with donning personal protective equipment if they are to perform their manufacturing work.

49.    Plaintiff and other similarly situated manufacturing employees were not paid for time spent donning their personal protective equipment.

**(Failure to Pay for Post-donning Walk Time)**

50.    After donning their personal protective equipment, Plaintiff and other similarly situated manufacturing employees walked from the area where they changed into their personal protective equipment to their assigned area of the manufacturing floor.  Such time constitutes "post-donning walk time."

51.    Plaintiff and other similarly situated manufacturing employees were not paid for their post-donning walk time.

13

**(Failure to Pay for Performing Manufacturing Work)**

52.     Plaintiff and other similarly situated manufacturing employees frequently started performing their manufacturing work before their shift start times and were often required to work past the end of their shift times to complete manufacturing tasks that were not finished at the end of their scheduled shift stop time.

53.     The time Plaintiff and other similarly situated manufacturing employees spent performing their manufacturing work was an integral and indispensable part of their principal activities, was required by Defendants, and was performed for Defendants' benefit.

54.     Plaintiff and other similarly situated manufacturing employees were not paid for the time spent performing their manufacturing work before their shift start time after their shift stop time.

**(Failure to Pay for Pre-doffing Walk Time)**

55.     After their shifts ended, Plaintiff and other similarly situated manufacturing employees walked from the manufacturing floor to the area in which they changed out of their personal protective equipment.  Such time constitutes "pre-doffing walk time."

14

56.    Plaintiff and other similarly situated manufacturing employees were not paid for their pre-doffing walk time.

**(Failure to Pay for Doffing Time)**

57.    After their shifts ended, Plaintiff and other similarly situated manufacturing employees doffed their personal protective equipment.

58.    The time Plaintiff and other similarly situated manufacturing employees spent doffing their personal protective equipment was an integral and indispensable part of their principal activities, was required by Defendants and OSHA, and was performed for Defendants' benefit in that it helped keep the manufacturing floor safe and helped promote a more safe and efficient manufacturing process.

59.    Doffing personal protective equipment is an intrinsic element of Plaintiff and other similarly situated manufacturing employees' job duties. Plaintiff and other similarly situated manufacturing employees cannot dispense doffing their personal protective equipment if they are to perform their manufacturing work.

60.    Plaintiff and other similarly situated manufacturing employees were not paid for time spent doffing their personal protective equipment.

**(Failure to Pay Overtime Compensation)**

61.    As a result of Plaintiff and other similarly situated manufacturing employees not being paid for all hours worked, Plaintiff and other similarly situated

15

manufacturing employees were not paid overtime compensation for all of the hours they worked over 40 each workweek.

62.    The time Plaintiff and other similarly situated employees spent performing the unpaid work referenced above was in addition to the 40 or more hours they regularly worked between their scheduled start and stop times each workweek, and thus, constituted overtime hours worked, for which they were/are entitled to overtime compensation at a rate of one and one-half times their regular hourly rate of pay.

**(Defendants Willfully Violated the FLSA)**

63.     Defendants knowingly and willfully engaged in the above-mentioned violations of the FLSA.

64.    Defendants knew and otherwise showed reckless disregard as to whether their conduct was prohibited by the FLSA.

65.    Defendants had/has a common practice and policy of requiring Plaintiff and other similarly situated employees to perform the unpaid work referenced above and not compensating them for time spent performing such work.

66.    Defendants knew that Plaintiff and other similarly situated employees were performing the unpaid work because Defendants required them to perform it and supervisors observed them performing it.

16

67.    Defendants, who determined the work schedules of Plaintiff and other similarly situated employees, also knew that the time Plaintiff and other similarly situated employees spent performing such unpaid work was in addition to the 40 hours or more that Defendants scheduled them to work, and thus, knew that Plaintiff and other similarly situated employees should have been paid overtime compensation for such unpaid work.

68.    Defendants knew and otherwise showed reckless disregard as to whether their conduct in failing to properly pay Plaintiff and other similarly situated employees for the unpaid work referenced above violated the FLSA.

69.    Defendants knew or should have known that their policies and practices violate the law, and Defendants did not make and have not made a good faith effort to comply with the FLSA. Rather, Defendants knowingly, willfully, and/or with reckless disregard of the law has carried out their unlawful pattern, practice, and policy of not paying Plaintiff other similarly situated manufacturing employees for all hours worked.  Defendants' method of paying Plaintiff and other similarly situated employees was not based on a good faith and reasonable belief that their conduct complied with the law.

70.    Upon information and belief, Defendants failed to make, keep and preserve accurate records of all of the unpaid work performed by Plaintiffs and other similarly situated manufacturing employees.

17

## COLLECTIVE ACTION ALLEGATIONS

71.    Plaintiff brings Count One of this action on her own behalf pursuant to 29 U.S.C. § 216(b), and on behalf of all other persons similarly situated who have been, are being, or will be adversely affected by Defendants' unlawful conduct.

72.    The collective class which Plaintiff seeks to represent and for whom Plaintiff seeks the right to send "opt-in" notices for purposes of the collective action, and of which Plaintiff is herself a member, is composed of and defined as follows:

> All current and former fulltime non-exempt manufacturing employees who worked at one or more Dart Container Corporation manufacturing plants in the United States at any time during the three-year period prior to the filing of this action to the present. ("FLSA Class")

73.    Plaintiff is unable, at this time, to state the exact size of the FLSA Class, but upon information and belief, it consists of more than 1,000 individuals.

74.    This action is maintainable as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) as to claims for unpaid wages, unpaid overtime compensation, liquidated damages, attorneys' fees, and costs under the FLSA.  In addition to Plaintiff, numerous current and former manufacturing employees are similarly situated with regard to their claims for unpaid wages and damages. Plaintiff is representative of those other employees and is acting on behalf of their interests as well as her own in bringing this action.

18

75.    The similarly situated manufacturing employees are known to Defendants and are readily identifiable through their payroll records. These individuals may readily be notified of this action and allowed to opt in pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their claims for unpaid wages, unpaid overtime compensation, liquidated damages, attorneys' fees and costs under the FLSA.

76.    Although the exact amount of damages may vary among the similarly situated employees in proportion to the number of hours they worked, damages for each individual can be easily calculated using a simple formula.

## PENNSYLVANIA CLASS ACTION ALLEGATIONS

77.    Plaintiff brings Count Two of this action pursuant to Fed. R. Civ. P. 23(a) and (b)(3) on behalf of herself and all other members of the class ("the Pennsylvania Class") defined as:

> All current and former non-exempt manufacturing employees, who worked at one or more Dart Container Corporation manufacturing plants in Pennsylvania at any time at any time during the three-year period prior to the filing of this action to the present.

78.    The Pennsylvania Class is so numerous that joinder of all class members is impracticable.  Upon information and belief, the Pennsylvania Class consists of more than 500 individuals.

79.     There are questions of law or fact common to the Pennsylvania Class, including but not limited to the following: (a) whether Defendants failed to pay overtime compensation to its non-exempt manufacturing employees for hours worked in excess of 40 each workweek; and (b) what amount of monetary relief will compensate Plaintiff and other members of the Pennsylvania Class for Defendants' violations of the PMWA, 43 P.S. § 333.101, *et seq.*

80.     The claims of Plaintiff are typical of the claims of other members of the Pennsylvania Class.  Plaintiff's claims arise out of the same uniform course of conduct by Defendants and are based on the same legal theories as the claims of the other Pennsylvania Class members.

81.     Named Plaintiff Andrea Middleton will fairly and adequately protect the interests of the Pennsylvania Class.  Her interests are not antagonistic to, but rather are in unison with, the interests of the other Pennsylvania Class members. Plaintiffs' counsel has broad experience in handling class action wage-and-hour litigation and is fully qualified to prosecute the claims of the Pennsylvania Class in this case.

82.     The questions of law or fact that are common to the Pennsylvania Class predominate over any questions affecting only individual members.  The primary questions that will determine Defendants' liability to the Pennsylvania Class, listed

above, are common to the class as a whole, and predominate over any questions affecting only individual class members.

83. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Requiring Pennsylvania Class members to pursue their claims individually would entail a host of separate suits, with concomitant duplication of costs, attorneys' fees, and demands on court resources. Many Pennsylvania Class members' claims are sufficiently small that they would be reluctant to incur the substantial cost, expense, and risk of pursuing their claims individually. Certification of this case pursuant to Fed. R. Civ. P. 23 will enable the issues to be adjudicated for all class members with the efficiencies of class litigation.

## <u>COUNT ONE</u>

### (Violations of Fair Labor Standards Act)

84. Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

85. Defendants' practice and policy of not paying Plaintiff and other similarly situated manufacturing employees for all time worked and overtime compensation at a rate of one and one-half times their regular rate of pay for all the hours they worked over 40 each workweek violated the FLSA, 29 U.S.C. §§ 201-219 and 29 CFR § 785.24.

86.     Defendants intentionally failed to pay Plaintiff and other similarly situated employees' required overtime compensation for hours worked in excess of 40 per workweek.

87.     Defendants' conduct in failing to pay Plaintiff and other similarly situated employees for all time worked and overtime compensation at a rate of one and one-half times their regular rate of pay for all the hours they worked over 40 each workweek was willful and/or in reckless disregard of the rights of Plaintiff and those similarly situated.

88.     Defendants' actions and/or omissions were not in good faith.

89.     By engaging in the above-mentioned conduct, Defendants willfully, knowingly, and/or recklessly violated the provisions of the FLSA.

90.     As a result of Defendants' practices and policies, Plaintiff and other similarly situated manufacturing employees have been damaged in that they have not received wages due to them pursuant to the FLSA.

## COUNT TWO

### (Violations of Pennsylvania Minimum Wage Act)

91.     Plaintiff, on behalf of herself and the Pennsylvania Class, realleges and incorporates by reference the foregoing allegations as if fully rewritten herein.

92.     Defendants' practices and policies of not paying Plaintiff and other similarly situated employees for all time worked, including overtime compensation

22

at the rate of one and one-half times their regular rate of pay for all of the hours they worked over 40 each workweek, violates the PMWA, 43 P.S. § 333.101, *et seq.*

93.    Defendants intentionally failed to pay Plaintiff and other similarly situated employees' required overtime compensation for hours worked in excess of 40 per workweek.

94.    Defendants' conduct in failing to pay Plaintiff and other similarly situated employees for all time worked and overtime compensation at a rate of one and one-half times their regular rate of pay for all the hours they worked over 40 each workweek was willful and/or in reckless disregard of the rights of Plaintiff and those similarly situated.

95.    Defendants' actions and/or omissions were not in good faith.

96.    By engaging in the above-described practices and policies, Defendants willfully, knowingly and/or recklessly violated the PMWA, 43 P.S. § 333.101, *et seq.*

97.    As a result of Defendants' practices and policies, Plaintiff and other similarly situated employees have been damaged in that they have not received wages due to them pursuant to the PMWA.

### **PRAYER FOR RELIEF**

98.    WHEREFORE, Plaintiff, and all those similarly situated, collectively pray that this Honorable Court:

(a)     Issue an order permitting this litigation to proceed as a collective action pursuant to the FLSA;

(b)     Order prompt notice to all class members that this litigation is pending and that they have the right to "opt in" to this litigation pursuant to 29 U.S.C. § 216(b);

(c)     Issue an order certifying the Pennsylvania Class pursuant to Fed. R. Civ. R. 23(a) and (b)(3);

(d)     Award Plaintiff and the classes she represents actual damages for unpaid wages;

(e)     Award Plaintiff and the classes she represents statutory liquidated damages in an amount to the unpaid wages found due to Plaintiff and the classes under the FLSA and the PMWA;

(f)     Award Plaintiff and the classes she represents pre- and post-judgment interest at the statutory rate;

(g)     Award Plaintiff and the classes she represents attorneys' fees, costs, and disbursements; and

(h)     Award Plaintiff and the classes she represents further and additional relief as this Court deems just and proper.

# JURY DEMAND

99.    Pursuant to their rights under the Constitution of the United States, U.S.

CONST. amend VII, and FED R. CIV. P. 38(a), Plaintiff hereby demands trial by jury.

Respectfully submitted,

/s/ *Matthew S. Grimsley*

Matthew S. Grimsley (OH 0092942)
Anthony J. Lazzaro (MI P86195)
Lori M. Griffin (OH 0085241)
The Lazzaro Law Firm, LLC
The Heritage Building, Suite 250
34555 Chagrin Boulevard
Moreland Hills, OH 44022
Telephone: 216-696-5000
Facsimile: 216-696-7005
matthew@lazzarolawfirm.com
anthony@lazzarolawfirm.com
lori@lazzarolawfirm.com

Attorneys for Plaintiff

25